518 S.E.2d 357

Willis LAYNE, Jr., Appellee,

v.

**WEST VIRGINIA CHILD SUPPORT ENFORCEMENT DIVISION,** Appellant.

No. 24637.

Supreme Court of Appeals of West Virginia.

Submitted May 13, 1998.

Decided July 2, 1998.

Dissenting Opinion of Justice Workman Nov. 25, 1998.

Amy M. Herrenkohl, Herrenkohl Law Office, Barboursville, West Virginia, Attorney for Appellee.

Kelly Wingard, Ilene S. Schnall, Acting General Counsel, West Virginia Department of Health and Human Resources, Charleston, West Virginia, Attorneys for Appellant.

MAYNARD, Justice:

Appellant, the Bureau for Child Support Enforcement (BCSE),[1] appeals the May 7, 1997 order of the Circuit Court of Cabell County, West Virginia, which granted permanent injunctive relief to appellee, Willis Layne, Jr. BCSE contends it is not required to provide notice to obligors prior to withholding income to collect alleged child support arrearages. BCSE also contends it can proceed with the collection of arrearages from the obligor even though a court has not made a determination as to whether an arrearage exists, and if so, the amount of the arrearage. We believe BCSE must comply with W.Va.Code § 48A–5–2. Therefore, we uphold the injunction until such time as BCSE complies with all requirements and provisions of W.Va.Code § 48A–5–2.

Willis Layne, Jr. and Valinda Sue Layne (now McFeeley) were married on February 13, 1978. One child was born of the marriage on March 5, 1978.[2] Layne and McFeeley separated in June 1985. A divorce decree was entered by the Boyd Circuit Court, Boyd County, Kentucky, on November 8, 1985. McFeeley was granted custody of the child. Layne was awarded reasonable visitation and ordered to pay child support in the amount of $75 per week when employed and $35 per week when unemployed.[3]

McFeeley insists Layne consistently failed to pay the child support installments. Layne insists McFeeley withheld visitation with the child, which he attempted to force by withholding child support. Nonetheless, in April 1987, Layne was ordered by the Boyd Circuit Court to pay all outstanding arrearages. Layne paid the past due installments. In May 1987, the court entered an order directing Layne to pay child support in the amount of $50 per week regardless of his employment status.

McFeeley contends Layne again fell into arrears on the child support obligation. Layne contends he paid all installments from 1987 until September 1995, when he suffered a stroke and was unable to work. Layne states that he was unable to make child support payments from that time until he received a social security disability award in December 1995. Pursuant to federal guidelines, support payments were then paid directly to the child until March 1996.

On September 12, 1995, after moving to West Virginia, McFeeley sought the services of BCSE to pursue the alleged child support arrearage. McFeeley completed a sworn affidavit of support arrearages, claiming she was owed $33,175 for July 1985 to August 31, 1995. Layne informed BCSE the Boyd Circuit Court found him to be current in all support obligations as of 1987. McFeeley then completed a second sworn affidavit, claiming an arrearage of $18,783.69 for May 1, 1987 through March 4, 1996.

On February 28, 1996, BCSE issued a notice of income withholding to the Edward Gray Corporation, a former employer of Layne. A copy of the notice was sent to McFeeley and Layne. Due to the stroke, Layne was no longer employed by the company. Layne apprised BCSE of this fact and informed the bureau that he was current with all past child support payments and his child support obligation would cease in March 1996. BCSE requested that Layne provide cancelled checks to verify payment. Layne contends he could not locate documentation because many installments were paid in cash directly to McFeeley.[4]

After discovering Layne would receive social security disability benefits, BCSE issued a notice of income withholding to the Social Security Administration. A copy of the notice was sent to McFeeley and Layne. The Social Security Administration notified Layne that an order of garnishment had been filed against his disability income. At that time, Layne contacted counsel for assis-

1. The Child Support Enforcement Division underwent a name change on July 1, 1997 and is now the Bureau for Child Support Enforcement.

2. The child, Jonathon Douglas Clay Layne, is emancipated and serving in the armed forces.

3. Layne was employed as a union ironworker, who lived a transient life working the eastern portion of the United States.

4. Layne provided BCSE with some money order receipts and has been credited for the amount reflected by the receipts.

tance. Layne initiated the present civil action by filing a complaint for temporary and permanent injunctive relief in circuit court. Layne sought equitable relief for violations of statutory law as well as violations of the West Virginia Constitution and the United States Constitution for the taking of his property without due process of law.

The court granted Layne preliminary injunctive relief. Following a full hearing on the matter on January 21, 1997, the court granted Layne permanent injunctive relief. The court found that no legal proceeding had been undertaken to establish the existence of an arrearage, and if an arrearage existed, the delinquent amount. The court also found this case falls within the purview of W.Va. Code § 48–2–15b(c),[5] and, as a result, the notice requirements provided in W.Va.Code § 48A–5–3[6] must be followed. The court concluded that "money or other property from [Layne's] social security benefits and/or other accounts or personal property" could not be withheld "until such time as a court of competent jurisdiction makes a finding of fact that [Layne] has failed to pay previously ordered child support." It is from this order that BCSE appeals.

BCSE admits it did not provide Layne with notice or an opportunity to be heard prior to notifying the Social Security Administration to withhold a percentage of his disability award. BCSE contends it is authorized to unilaterally and without any notice determine Layne to be in arrears and to fix the amount of the arrearage. BCSE further asserts it can then initiate income withholding without notice or hearing because matured child support installments stand as decretal judgments, and neither exception included in W.Va.Code § 48–2–15b(c) applies here. BCSE argues the lower court erred by ruling: (1) that BCSE is required to comply with the notice provisions of W.Va. Code § 48A–5–3(b); and (2) that in the absence of a judgment for child support arrearages, BCSE cannot proceed with the collection of accrued child support arrearages.

■ The United States Constitution and the West Virginia Constitution both unequivocally prohibit depriving a person of his or her property without due process of law.[7] This Court has previously said, " 'The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard.' Point 2, Syllabus, *Simpson v. Stanton,* 119 W.Va. 235 [193 S.E. 64]." Syllabus Point 1, *Sisler v. Hawkins,* 158 W.Va. 1034, 217 S.E.2d 60 (1975). This means that "at a minimum [the due process clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865, 873 (1950).

Each method of collecting past due child support installments provided in West Virginia Code Chapter 48A, Article 5 specifies due process requirements which must be fol-

---

5. W.Va.Code § 48–2–15b(c) (1995) provides:

   (c) On and after the first day of January, one thousand nine hundred ninety-four, the wages of an obligor shall be subject to withholding, regardless of whether child support payments are in arrears, on the date the order for child support is entered: Provided, That where one of the parties demonstrates, and the court finds, that there is good cause not to require immediate income withholding, or in any case where there is filed with the court a written agreement between the parties which provides for an alternative arrangement, such order shall not provide for income withholding to begin immediately.

6. W.Va.Code § 48A–5–3(b) (1995) provides:

   (b) When immediate income withholding is not required due to the findings required by subsection (c), section fifteen-b [§ 48–2–15b(c) ], article two, chapter forty-eight of this code, the child support enforcement division shall mail a notice to the obligor pursuant to this section when the support payments required by the order are in arrears in an amount equal to:

   (1) One month's support, if the order requires support to be paid in monthly installments;

   (2) Four weeks' support, if the order requires support to be paid in weekly or biweekly installments; or

   (3) Two biweekly installments, if biweekly payments are provided.

7. *See* U.S. Const. amend. XIV, § 1 and W.Va. Const. art. 3, § 10.

lowed. W.Va.Code § 48A–5–2 provides the notice requirements that must be followed when an obligor is in arrears. W.Va.Code § 48A–5–3 provides the notice requirements that must be followed when an obligor who is not immediately subject to income withholding later becomes delinquent and is then subject to income withholding. W.Va.Code § 48A–5–4 provides the notice requirements that must be met when a lien is imposed against real or personal property of an obligor who owes past due support payments. W.Va.Code § 48A–5–5 contains the mandatory due process requirements which must be complied with prior to enforcing support orders with civil or criminal contempt proceedings.

We note that our law treats current and future child support obligations radically different from accrued past due arrearages. The cautious and careful reader of our statutes will note that totally different collection procedures are provided for current obligations as opposed to accrued, past due obligations. W.Va.Code § 48–2–15b and W.Va. Code § 48A–5–3 authorize immediate wage withholding for *current* child support obligations without further action of the court and provide for automatic wage withholding whether or not the obligor is in arrears. Curiously, the briefs submitted in this case and the lower court's order focus on these two code sections. Apparently there is a scrivener's error in paragraph 22 of the court's May 7, 1997 order, where the court states BCSE must comply with W.Va.Code § 48A–5–3(b). The code section that obviously applies here is W.Va.Code § 48A–5–2 because McFeeley contends that Layne owes child support arrearages. McFeeley is not alleging Layne owes any current support obligations. In fact, due to the child's emancipation, Layne cannot owe current support payments.

Layne's situation is clearly controlled by W.Va.Code § 48A–5–2 (1997), which details the procedure that must be followed before wages may be attached to cover matured, unpaid child support arrearages. This code section reads as follows:

(a) The total of any matured, unpaid installments of child support required to be paid by an order entered or modified by a court of competent jurisdiction, or by the order of a magistrate court of this state under the prior enactments of this code, shall stand, by operation of law, as a decretal judgment against the obligor owing such support. The amount of unpaid support shall bear interest from the date it accrued, at a rate of ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time. A child support order shall not be retroactively modified so as to cancel or alter accrued installments of support. When an obligor is in arrears in the payment of support which is required to be paid by the terms of such order, an obligee may file an "Affidavit of Accrued Support" with the clerk of the circuit court, setting forth the particulars of such arrearage, and requesting a writ of execution, suggestion or suggestee execution. If the duty of support is based upon a foreign support order, the obligee shall first register the foreign support order in the same manner and with the same effect as such orders are registered in actions under the uniform interstate family support act as set forth in article six [§ 48B–6–1 et seq.], chapter forty-eight-b of this code: Provided, That a copy of the reciprocal enforcement of support law of the state in which the order was made need not be filed with the clerk.

(b) The affidavit may be filed in the county wherein the obligee or the obligor resides, or where the obligor's source of income is located.

(c) The affidavit may be filed when a payment required by such order has been delinquent, in whole or in part, for a period of fourteen days.

(d) The affidavit shall:

(1) Identify the obligee and obligor by name and address, and shall list the obligor's social security number or numbers, if known;

(2) Name the court which entered the support order and set forth the date of such entry;

(3) State the total amount of accrued support which has not been paid by the obligor;

(4) List the date or dates when support payments should have been paid but were not, and the amount of each such delinquent payment; and

(5) If known, the name and address of the obligor's source of income.

(e) Upon receipt of the affidavit, the clerk shall issue a writ of execution, suggestion or suggestee execution, and shall mail a copy of the affidavit and a notice of the filing of the affidavit to the obligor, at his last known address. If the children's advocate is not acting on behalf of the obligee in filing the affidavit, the clerk shall forward a copy of the affidavit and the notice of the filing to the children's advocate.

(f) **The notice provided for in subsection (e) of this section shall inform the obligor that if he or she desires to contest the affidavit on the grounds that the amount claimed to be in arrears is incorrect or that a writ of execution, suggestion or suggestee execution is not proper because of mistakes of fact, he or she must, within fourteen days of the date of the notice: (1) Inform the children's advocate in writing of the reasons why the affidavit is contested and request a meeting with the children's advocate; or (2) obtain a date for a hearing before the family law master and mail written notice of such hearing to the obligee and to the children's advocate on a form prescribed by the administrative office of the supreme court of appeals and made available through the office of the clerk of the circuit court.**

(g) Upon being informed by an obligor that he or she desires to contest the affidavit, the children's advocate shall inform the court of such fact, and the court shall require the obligor to give security, post a bond, or give some other guarantee to secure payment of overdue support.

(h) The clerk of the circuit court shall make available form affidavits for use under the provisions of this section. Such form affidavits shall be provided to the

clerk by the child advocate office. The notice of the filing of an affidavit shall be in a form prescribed by the child advocate office.

(i) Writs of execution, suggestions or suggestee executions issued pursuant to the provisions of this section shall have priority over any other legal process under the laws of this state against the same income, except for withholding from income of amounts payable as support in accordance with the provisions of section three [§ 48A–5–3] of this article, and shall be effective despite any exemption that might otherwise be applicable to the same income.

(j) Notwithstanding any other provision of this code to the contrary, the amount to be withheld from the disposable earnings of an obligor pursuant to a suggestee execution in accordance with the provisions of this section shall be the same amount which could properly be withheld in the case of a withholding order under the provisions of subsection (e), section three [§ 48A–5–3(e) ] of this article.

W.Va.Code § 48A–5–2 (1997). (Emphasis added).

■ In the case *sub judice*, McFeeley completed the "Affidavit of Accrued Support." Unfortunately, the process broke down at that point and the statute was ignored. The affidavit was not filed with the circuit clerk and we cannot tell from the record that was submitted on appeal whether the foreign support order was registered in West Virginia. Because the affidavit was not filed with the clerk, the clerk could not then issue a writ of execution, suggestion or suggestee execution and provide Layne with notice. Since Layne had no notice, he had no opportunity to contest the affidavit and request a meeting with the children's advocate or a hearing before the family law master. He was totally stripped of his due process rights. These important rights are guaranteed by both the Federal and State Constitutions, and the exact procedure for affording the appellee these rights is set forth in very plain and unambiguous language in the statute, W.Va.Code § 48A–5–2. Layne must be given notice and an opportunity to be heard

before his disability income can be attached for alleged child support arrearages.

■ We therefore hold that when an obligor owes matured, unpaid child support arrearages, the mandatory procedure which must be followed prior to instituting automatic withholding of the obligor's income is set forth in W.Va.Code § 48A–5–2. The circuit court reached the correct decision in granting Layne an injunction until he is afforded procedural due process. The judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.

WORKMAN, Justice, dissenting:
(Filed Nov. 25, 1998)

I must respectfully dissent from the majority as it wrongly concludes that a single statutory provision is controlling with respect to the collection of child support arrearages. In holding that the procedures of West Virginia Code § 48A–5–2 (1998) must be followed prior to instituting automatic withholding of an obligor's income, the majority has failed to comprehend the statutory scheme of child support collection established by the Legislature. Rather than only one procedural mechanism for collecting child support arrearages, there are in fact four separate means of collecting child support.

One method by which an obligee of child support may seek to collect unpaid child support is to follow the procedures set forth in West Virginia Code § 48A–5–2 for instituting a lien against the obligor's personal property. A second method of collecting child support obligations, both current and *past due*, is to pursue the mechanism provided for in West Virginia Code § 48A–5–3 (1998), which authorizes automatic withholding from the obligor's wages. Under the provisions of West Virginia Code § 48A–5–4 (1998), an obligee can file a lien against the obligor's real property for overdue child support. The final method contemplated by the Legislature for enforcement of support obligations involves

the commencement of contempt proceedings in accordance with West Virginia Code § 48A–5–5 (1998).

The majority wrongly focused on language found in West Virginia Code § 48A–5–2, which addresses the procedures that are to be followed prior to obtaining a writ of execution, suggestion, or suggestee execution in connection with filing a lien against an obligor's personal property, and concluded that these procedures similarly apply to wage withholding collection scenarios. Nothing could be further from the truth.[1] As delineated above, the Legislature clearly set forth four different mechanisms for collecting child support. While an obligee could clearly opt to pursue collection efforts under all four of these statutory provisions, the procedures necessary to obtain the issuance of a writ of execution, suggestion or suggestee execution as stated in West Virginia Code § 48A–5–2 are *nota* prerequisite to seeking child support through the means of wage withholding provided for in West Virginia Code § 48A–5–3.

Another serious mistake in reasoning that the majority makes is to conclude that the wage withholding provisions set forth in West Virginia Code § 48A–5–3 only apply to current support obligations. Even a cursory examination of the language of West Virginia Code § 48A–5–3 reveals that the Legislature both envisioned and provided for wage withholding for support obligations that are current, past–due, or a past due support obligation that coexists with a current support obligation. Contrary to the majority's ruling, automatic income withholding is legally mandated under the provisions of West Virginia Code § 48A–5–3. This is in accord with federal law which requires income withholding as a mechanism for collecting child support. *See* 45 C.F.R. § 303.6 (1995).

The majority spends much time discussing the need for due process protections in connection with child support collection efforts.

1. The majority similarly errs in its statement that "totally different collection procedures are provided for current obligations as opposed to accrued, past due obligations." This is patently fallacious as all four types of collection/enforcement mechanisms apply in cases where child support obligations are past due. Since income withholding applies to both current and past due obligations under West Virginia Code § 48A–5–3, the majority's view of collection procedures is simply not supported by law.

Presumably, the majority finds fault with automatic wage withholding on the grounds of notice. Yet, consistent with federal law, *see* 42 U.S.C.A. § 666(b) (1998), notice is only required in automatic wage withholding cases in two instances. Pursuant to West Virginia Code § 48-2-15b(c) (1998), income withholding shall not be automatic where good cause is established or where the parties submit an agreement providing for an alternate arrangement for collection. In the instant case, the parties conceded that neither of these exceptions apply.

The ruling of the majority has placed this State in a precarious financial situation as the Child Support Enforcement Division ("Division") argues that it is now at risk of placing federal funds[2] in jeopardy if it follows the majority's position and first jumps through the procedural hoops delineated in West Virginia Code § 48A-5-2 (i.e. obtaining an affidavit and/or court order) before instituting income withholding under West Virginia Code § 48A-5-3. As the Division points out in its brief supporting its petition for rehearing, by adhering to the procedures outlined in West Virginia Code § 48A-5-2 it stands at risk of violating federal law mandating automatic withholding, 42 U.S.C.A. § 666(a)(1)(B), (b)(9) (1998), due to the possibility that an obligor would schedule a hearing pursuant to West Virginia Code § 48A-5-2(f) to contest the affidavit of accrued support. Furthermore, the Division argues that compliance with the majority's ruling will force it to violate federal time limits that require it to withhold income within two days of locating an obligor's source of income. *See* 42 U.S.C.A. §§ 653a(g)(1); 654(g)(1)(a) (1998). Violation of this two-day requirement seems inevitable if the majority position is followed given the fourteen-day moratorium imposed upon the collecting party by West Virginia Code § 48A-5-2(g).[3]

Once again, as is all too often the case where children are involved, the delays in receiving child support that will result from adherence to the majority ruling and possible

federal funding losses brought about by the majority's ruling will surely inure to the detriment of the child. Any delay in the receipt of child support payments, which we have previously declared to be "exclusively for the benefit and economic best interest of the child," will undoubtedly exacerbate the negative impact already realized by the child who is owed support. *Carter v. Carter*, 198 W.Va. 171, 176, 479 S.E.2d 681, 686 (1996). Through the majority's emasculation of the automatic wage withholding mechanism of collecting child support, this State's previously-declared public policy to resolve issues of "visitation, child support and child custody" consistent with the "best interest and welfare of the children" in mind has been violated. *Carter*, 198 W.Va. at 176, 479 S.E.2d at 686.

I am authorized to say that Chief Justice DAVIS joins me in this dissent.

---

**2.** The Division represents the amount of federal funds at risk as $130,000,000.

**3.** Under West Virginia Code § 48A-5-2(g), the obligor has fourteen days in which to contest the

affidavit of accrued support by informing the Division in writing of its basis for contesting the affidavit or to obtain a court hearing for the same purpose.