534 S.E.2d 747

Ida L. DALTON, Plaintiff/Respondent Below, Appellant,

v.

Delbert H. DALTON, Defendant/Petitioner Below, Appellee.

No. 26636.

Supreme Court of Appeals of West Virginia.

Submitted March 21, 2000.

Decided July 11, 2000.

Mark D. Panepinto, Esq., Panepinto Law Offices, Wheeling, West Virginia, Attorney for the Appellant.

J. Douglas Crane, Esq., J. Douglas Crane, L.C., Morgantown, West Virginia, Attorney for the Appellee.

MAYNARD, Chief Justice:

This is an appeal from a February 11, 1999 final order of the Circuit Court of Barbour County which resolved alleged arrearages in child support and alimony. In this appeal, the appellant, Ida L. Dalton, alleges that the circuit court erred in adopting the family law master's legal conclusion that when "the obligor of child support is living in the same household as the support obligee and the object of the support obligation, there tend [sic] to be a presumption that the obligor's income has gone to the support of the child and all the credits met." We agree with the appellant.

## I.

## FACTS

Ida L. Dalton, the appellant, and Delbert H. Dalton, the appellee, were married on September 27, 1979, and a child was born to their marriage on June 9, 1980. The parties entered into a separation agreement bearing the date of November 3, 1988. They were granted a divorce by order of the Circuit Court of Barbour County on January 30, 1989. The circuit court's order approved and incorporated the parties' separation agreement. The final order provided, *inter alia*, that the appellant was awarded care, custody, and control of the couple's minor child, and the appellee was ordered to pay child support of $225.00 per month and $100.00 per month in spousal support.[1] These support payments were ordered to begin as of November 5, 1988. The child support payments were to continue until the child attained the age of eighteen years. The spousal support payments were to continue until the child attained the age of eighteen years or the wife sooner remarried.

After the parties were divorced, the appellee continued to reside in the same house as

---

1. In addition to the terms set forth above, the agreement also provided that the appellant,

   shall receive as her own separate property her undivided interest in certain real estate situate in Barbour County, West Virginia, the 1986 Mercury Cougar automobile, the 1986 Ford XLT truck, two motorcycles, and two 4–wheelers, all household goods and furniture, all of her personal belongings and those of the child, all bank accounts, and all pension amounts to which she may become entitled; and the [appellee] shall receive as his own separate property the Mercury Lynx automobile, all of his personal belongings, any bank account solely in his name, and all pension amounts to which he may become entitled.

the appellant and their minor child for approximately the next eight years.[2] The nature of the parties' relationship during this period is a matter of great dispute. In the final hearing before the family law master, the appellee testified that he and the appellant continued to live as if they were husband and wife. According to the appellee, they purchased personal property together, maintained joint credit card accounts, and continued to have sexual relations. Further, the appellee testified that he helped in the support of the appellant and their son.[3]

The appellant, on the other hand, testified that she allowed the appellee to continue to live in the house for the benefit of their son. According to the appellant, the terms of the cohabitation were that the appellee maintained a separate social life and separate friendships and paid his own living expenses. She also testified that the parties did not have sexual relations during their cohabitation. The appellant stated further that the appellee did not assist her in paying the bills and made no offer to pay child support or alimony. Finally, the appellant declared that the appellee was rarely at home and instead spent most of his time with a girlfriend and other friends.

In the Fall of 1997, the appellant commenced collection proceedings against the appellee for arrearages in both child and spousal support.[4] In November 1997, the appellee received notice from the Office of the Monongalia County Child Support Enforcement Division ("CSED")[5] that the sum of $325.00 would be withheld from the appellee's wages per month as current child and spousal support. The appellee was also informed that he owed the sum of $52,675.91 in child support arrearages for which there would be additional withholdings from his wages.[6] Also contained in the record is an amended "Order/Notice To Withhold Income For Child Support," received by the Circuit Court of Barbour County on July 21, 1998, which states that $506.25 is to be withheld from the appellee's monthly income. The sum of $406.25 was designated as past due support for arrears of 12 weeks or greater.

On January 26, 1998, the appellee filed a Petition For Modification in the Circuit Court of Barbour County in which he requested a reduction of child support, a termination of spousal support, and the termination of arrearages of child support. The appellee stated that he is not responsible for any back child support because he has lived with and fully supported his child from the date of the child's birth through August 1997. In her Reply To Petition For Modification, dated April 10, 1998, the appellant responded that whereas the appellee lived in the home provided for their child after the divorce, it was she who financially supported the child and herself. The appellant requested, in part, that she be awarded a judgment for the arrearage of child support and alimony through January 1998, including interest. The appellant further requested that the appellee's child support obligation be recalculated for the time period from February 1, 1998 through June 1, 1998, at which time it should terminate as the parties' son will have

---

2. In his recommended order, the family law master found that the parties lived together after the divorce until November or December 1996.

3. The appellee testified that he was unsophisticated in financial matters and did not have a checking account. Therefore, his practice was to hand his paycheck over to the appellant so that she could deposit it in her checking account and use it to pay bills.

4. The appellant testified that she filed an "Affidavit of Accrued Support" pursuant to W.Va.Code § 48A-5-2 in which she alleged that the appellee had failed to fulfill his child support obligations as required in the January 30, 1989 divorce order.

5. The parties were employed in Monongalia County. The appellee worked at West Virginia University as a custodian, and the appellant was employed by West Virginia University as a registered nurse.

6. In the recent case of *Layne v. West Virginia Child Support Enforcement Division*, 205 W.Va. 353, 518 S.E.2d 357 (1998), we stated in Syllabus Point 2 that "[w]hen an obligor owes matured, unpaid child support arrearages, the mandatory procedure which must be followed prior to instituting automatic withholding of the obligor's income is set forth in W.Va.Code § 48A-5-2." It appears from the record that this procedure was followed in the instant case, and there is no allegation that the proper procedure was not followed.

attained the age of 18 years and graduated from high school.[7]

After hearings on the matter, the family law master entered a recommended order in which he found in pertinent part:

2. That it is generally presumed that the person that pays child support by cash and does not get a receipt is out of luck and will not get a credit unless the recipient of that child support is honest enough to acknowledge it.

3. That it is also generally presumed that if the obligor of child support is living in the same household as the support obligee and the object of the support obligation, there tend [sic] to be a presumption that the obligor's income has gone to the support of the child and all the credits met.

4. That the [Appellee] testified that he gave cash and money to the Plaintiff in satisfaction of his support obligation while they were living together. It is substantiated by the fact that he did not have a checking account prior to the divorce nor one after the divorce and that he was not the financial manager of his own finances.

5. That the parties continued to acquire assets together and sign joint debts, all of which leaves [sic] that the Plaintiff failed to meet the burden of proof that there was no support during the time that the parties lived together.

6. That the [Appellant] admits that the [Appellee] did a number of things with the minor child and did not ask for [sic] her for any money to do that.

7. That there are instances to suggest that the parties even after the divorce had financial obligations together.

\* \* \*

11. That the parties' living together under the same roof was a satisfaction of the support order for both child support and alimony during those times that they were living together, which was essentially from the time of the entry of the divorce decree until the last day of August 1997 for child support and until the last day of November 1996 for alimony.

As a result of these findings, the family law master granted a decretal judgment against the appellee in the amount of $2,250.00 through August 1998 for accrued child support and a decretal judgment in the amount of $1,300.00 through August 1998 for accrued alimony.[8] Further, the family law master ordered that the appellee's alimony obligation is satisfied as of December 31, 1997, and the appellee is not responsible for any alimony obligation for 1998. However, the alimony issue was left open for possible future modification. Finally, the family law master ordered that the appellee should pay the appellant $200.00 per month for child support until the parties' child reaches the age of 18.

The appellant petitioned for review of the family law master's recommended order in the Circuit Court of Barbour County. By order of February 11, 1999, the circuit court denied the appellant's petition for review and adopted the findings of fact and conclusions of law of the recommended order.

---

7. The appellant also stated that she is employed as a registered nurse and had no need of financial support. Accordingly, she requested that spousal support be suspended as of February 1, 1998, and she reserved the right to reapply for spousal support in the future if she experienced a change of circumstances.

8. The sum of $2,250.00 represents child support payments for ten months, and the sum of $1,300.00 represents spousal support payments for thirteen months. The family law master found that the appellee and the appellant lived in the same house until the last day of November 1996. At that time the appellant vacated the house and the appellee continued to live in the house with the parties' son until the end of August 1997 at which time the appellee moved out and the appellant moved back into the house.

According to the family law master, alimony was satisfied as of December 31, 1997. It appears that this finding may be based on the appellant's assertion in her April 10, 1998 Reply to Petition For Modification that she had no financial need at that time for spousal support. Accordingly, the family law master found that spousal support payments were owed to the appellant for the thirteen month period of December 1996 through December 1997. Concerning the child support payments, the family law master found that the appellee lived with the parties' son until the last day of August 1997. The child reached the age of eighteen in June 1998. Therefore, the appellee owed child support payments for the ten month period of September 1997 through June 1998.

## II.

## STANDARD OF REVIEW

This Court has held that in reviewing "challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied." Syllabus Point 1, in part, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995). "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syllabus Point 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996). This Court has also stated that "[i]n a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence." Syllabus Point 3, *Taylor v. Taylor,* 128 W.Va. 198, 36 S.E.2d 601 (1945). We have further explained:

> A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syllabus Point 1, in part, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996). With these standards to guide us, we now proceed to review the issue raised by the appellant.

## III.

## DISCUSSION

The sole assignment of error raised by the appellant is that the circuit court erred in finding that the parties' continued cohabitation was a satisfaction of the support order for both child support and alimony during the times that the parties cohabited. The appellant argues, first, that this issue was settled in this Court's recent holding in Syllabus Point 1 of *Griffis v. Griffis,* 202 W.Va. 203, 503 S.E.2d 516 (1998), which states that "where the parties ... simply cohabit, the preexisting [child support] order does not automatically terminate, but remains in full effect, and the child support obligation continues as defined in that order." Second, the appellant avers that the law is clear that child support payments vest as they accrue so that circuit courts lack the authority to modify or cancel accrued child support payments retroactively. *Citing* syl. pt. 2, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987) and *Carter v. Carter,* 198 W.Va. 171, 479 S.E.2d 681 (1996). Therefore, says the appellant, the Circuit Court of Barbour County lacked the authority to cancel the child support payments that accrued during the several years in which the parties cohabited. Finally, the appellant asserts that the legal presumption that the parties' cohabitation was satisfaction of the appellee's child and spousal support payments has no basis in the law. The appellant concludes that she lacked notice that she had the burden of rebutting this presumption in the hearings before the family law master.

The appellee responds that he agrees that mere cohabitation is not sufficient to terminate a prior order of child and spousal support. The appellee argues, however, that in this case support was not terminated or withheld. Instead, according to the appellee, the evidence before the family law master shows that he worked toward supporting his family while he cohabited with them. Specifically, he assisted in household maintenance, the financing of family vacations, and the purchase of personal property. The appellee concludes that, in light of the evidence, the family law master did not abuse his discretion in finding that the appellee met his child and spousal support obligations during the time period in which the parties cohabited.

As noted above, this case comes to us as a result of the appellee's petition for modification of alimony and child support which was filed in response to the appellant's efforts to collect alleged arrearages.[9]

9. The appellant's effort to collect child support arrearages is governed by W.Va.Code § 48A–5–2

In his petition for modification, the appellee requested a reduction of child support, a termination of spousal support, and the termination of arrearages of child support. However, our law is carved in stone that while alimony and child support orders may be modified if there is a substantial change of circumstances, the modification can be prospective only. We have stated that "[m]atured installments provided for in a decree, which orders the payment of monthly sums for alimony or child support, stand as 'decretal judgments' against the party charged with the payments." Syllabus Point 1, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987). Therefore, "[t]he authority of the circuit courts to modify alimony or child support awards is prospective only and, absent a showing of fraud or other judicially cognizable circumstance in procuring the original award, a circuit court is without authority to modify or cancel accrued alimony or child support payments." Syllabus Point 2, *id.* In addition, W.Va.Code § 48A–5–2(a) provides that "[a] child support order shall not be retroactively modified so as to cancel or alter accrued installments of support." It is clear, therefore, that the circuit court did not have the authority to terminate the child support arrearages as requested by the appellee.

However, the circuit court, in its final order, does not purport to terminate accrued spousal and child support payments. Rather, the circuit court found that the appellee had made his past support payments during the years in which the parties cohabited. This conclusion was based, at least in part, on the finding "[t]hat the parties' cohabitation was a satisfaction of the support order for both child support and alimony during the times that the parties were living together and the Defendant was living in the same house as the minor child." The appellant now argues that this finding is incorrect.

■ In Syllabus Point 1, in part, of *Griffis v. Griffis*, 202 W.Va. 203, 503 S.E.2d 516 (1998), we held that "where the parties . . . simply cohabit, the preexisting [child support] order does not automatically terminate, but remains in full effect, and the child support obligation continues as defined in the order." We explained this holding as follows:

We find that the substantial differences that exist between marriage and cohabita-

(1991) which was in effect at the time the appellant sought allegedly unpaid child support in the Fall of 1997. This code section provided in relevant part:

(a) When an obligor is in arrears in the payment of support which is required to be paid by the terms of such order, an obligee may file an "Affidavit of Accrued Support" with the clerk of the circuit court, setting forth the particulars of such arrearage, and requesting a writ of execution, suggestion or suggestee execution.

\*    \*    \*

(e) Upon receipt of the affidavit, the clerk shall issue a writ of execution, suggestion or suggestee execution, and shall mail a copy of the affidavit and a notice of the filing of the affidavit to the obligor, at his last known address. If the children's advocate is not acting on behalf of the obligee in filing the affidavit, the clerk shall forward a copy of the affidavit and the notice of the filing to the children's advocate.

(f) The notice provided for in subsection (e) of this section shall inform the obligor that if he or she desires to contest the affidavit on the grounds that the amount claimed to be in arrears in incorrect or that a writ of execution, suggestion or suggestee execution is not proper because of mistakes of fact, he or she must,

within fourteen days of the date of the notice: (1) Inform the children's advocate in writing of the reasons why the affidavit is contested and request a meeting with the children's advocate; or (2) obtain a date for a hearing before the family law master and mail written notice of such hearing to the obligee and to the children's advocate on a form prescribed by the administrative office of the supreme court of appeals and made available through the office of the clerk of the circuit court.

It appears from the record, however, that instead of contesting the affidavit of accrued support pursuant to W.Va.Code § 48(A)–5–2(f), the appellee filed a petition for modification in the Circuit Court of Barbour County. Nevertheless, the outcome of the case appears unaffected by any procedural irregularity since the appellee was given the opportunity to contest the alleged arrearages before the family law master, and the family law master and the circuit court ruled on the issue.

We note also that W.Va.Code § 48(A)–5–2(f) has been amended twice since the appellant filed her affidavit of accrued support, once in 1997, which amendment became effective January 1, 1998, and also in 1998, which amendment became effective June 12, 1998. These amendments have no bearing on the disposition of this case.

tion unquestionably compel the conclusion that cohabitation, without marriage, is insufficient to automatically nullify the provisions of an existing court order related to child custody and support. Since common law marriages may not be validly formed in this State, cohabitation does not legally unite a family as does marriage. Furthermore, cohabitation simply does not require the same formalities as marriage. More important than the formalities of entering the bond of marriage, though, are the formalities required to terminate the marriage. In this regard, we find it significant that termination of a marriage requires a legal procedure that includes built-in protections for the best interests of the parties' child or children.

Upon the termination of a marriage or second marriage between parents, custody and support issues will be visited anew. Thus, the child will not be harmed by the fact that an earlier child support order was terminated upon the marriage or remarriage of the parents. There is no such protection in place when a couple ceases to cohabit. Consequently, if cohabitation were sufficient to terminate a prior order of child support, a child could, and most likely would, be significantly harmed if and when his or her parents cease to cohabit. In the absence of a legally significant unification of the family, we must decline to find that the provisions of a court order mandating child support are automatically terminated. *Griffis v. Griffis*, 202 W.Va. at 211, 503 S.E.2d at 524 (footnotes and citations omitted).

While this Court has never held specifically that a court order mandating the payment of alimony does not automatically terminate upon the cohabitation of the parties, the same considerations as those stated above compel us to conclude that it does not. Because cohabitation does not legally unite a family or require the same formalities of marriage, it does not guarantee that the dependent party will continue to receive necessary support from the obligor during the cohabitation. Cohabitation, unlike remarriage, is simply not an easily identifiable event or condition. It may or may not be compatible with remarriage where the parties live together and assume responsibility for the welfare of each other. *See In re Marriage of Wendell*, 581 N.W.2d 197 (Iowa Ct.App.1998). Also, because cohabitation does not require the same formalities to terminate as marriage, it is much more likely that the parties will cease to cohabit, at which time the dependent spouse will be left, at least temporarily, without support. *See Upton v. Duck*, 249 Ga. 267, 290 S.E.2d 92 (1982) (statute providing that subsequent voluntary cohabitation shall annul permanent alimony obligation is not applicable to cohabitation of former husband and wife).[10]

Further, this Court has previously said that "an ex-wife's cohabitation with an adult male not her husband does not constitute grounds for termination or reduction of alimony award absent showing of change in financial condition of ex-wife by reason of contribution by the person with whom she cohabits." *Judith R. v. Hey*, 185 W.Va. 117, 121, 405 S.E.2d 447, 451 (1990). *See also McVay v. McVay*, 189 W.Va. 197, 429 S.E.2d 239 (1993). This is based on the fact that W.Va.Code § 48–2–15, which provides circuit courts with authority to modify divorce decrees, "makes no reference to the conduct of the parties after the granting of a divorce. Rather it makes their financial circumstances and needs and the requirements of justice the factors to be considered in determining whether an alimony award should be modified." *Wight v. Wight*, 168 W.Va. 334, 337, 284 S.E.2d 625, 626–27 (1981) (citations omit-

---

**10.** A great challenge to legislators and jurists is to ensure that the law retains its effectiveness and vitality in responding to the constant changes in modern society. The writer of this opinion remembers a simpler time, prior to the watershed years of the 1960s and the radical developments of that era, when domestic law was limited essentially to marriage and its dissolution. We now live in curious times when marriage is just one of many alternative domestic arrangements, some of which we cannot even imagine. One popular alternative arrangement is cohabitation absent the formalities of marriage. Our task as judges is to create equitable principles to govern these alternative domestic arrangements. This task is especially challenging when parties involved in such arrangements become disaffected with each other and separate, and they jointly own property and money which must be fairly divided.

ted). We find no reason to distinguish between cohabitation with a third person and cohabitation with the obligor spouse in determining the effect that the cohabitation of the obligee spouse has on the obligor's alimony obligation. Accordingly, we hold that the payment of alimony mandated in a divorce order does not automatically terminate upon the mere cohabitation of the parties to the divorce order, but remains in full force and effect, and the alimony obligation continues as defined in the divorce order.

■ We believe, however, that post-divorce cohabitation of the parties is one factor to be considered in determining whether an obligor former spouse has met his or her spousal and child support obligations. When parties cohabit, the payment of support obligations by the obligor former spouse most likely will be less formal than the monthly presentment of a support check. Instead, the obligor may contribute to rent or mortgage payments; purchase groceries and clothing for the children; assist in the payment of child care, etc. When an obligee former spouse alleges that the obligor former spouse, with whom he or she cohabited for a period of time following their divorce, failed to meet his or her support obligations during the period of cohabitation, it is incumbent upon the finder of fact to conduct an evidentiary hearing to determine the amount of money contributed, in whatever fashion, by the obligor for the support of his or her former spouse and/or child(ren) during the parties' cohabitation. These monetary contributions constitute credits toward the fulfillment of the obligor's support obligations. Therefore, we hold that the post-divorce cohabitation of former spouses is one factor to be considered in determining whether an obligor former spouse has fulfilled his or her court-ordered support obligations as required by the parties' divorce decree. The inquiry is whether and to what extent the obligor former spouse contributed financially to the support of the obligee former spouse and/or the parties' child(ren) during the parties' cohabitation. Any monetary contribution made by the obligor former spouse to the obligee former spouse for the support of the obligee former spouse and/or the parties' child(ren) constitutes a credit toward the fulfillment of the obligor former spouse's court-ordered support obligations.

We have thus far determined that the appellee's alimony and child support obligations, as set forth in the January 30, 1989 order, remained in full force and effect during the period in which the parties cohabited. Any monetary contributions made during this period by the appellee for the support of the appellant and the parties' child operate as credits toward the fulfillment of the appellee's court-ordered support obligations. We have also determined that the circuit court had no authority to modify these support obligations retroactively due to the parties' cohabitation. Next, we address the question of which party bore the burden of proving whether or not the appellee fulfilled his support obligations during the parties' cohabitation.

■ The general rule articulated by this Court is that "[t]he party who alleges payment as a defense has the burden of proving it." Syllabus point 4, *Allegheny Development Corp., Inc. v. Barati*, 166 W.Va. 218, 273 S.E.2d 384 (1980). *See also Saunders v. Huffman*, 119 W.Va. 31, 33, 192 S.E. 297, 298 (1937) ("The defendants having pleaded the payment of an admitted debt, the burden of proving it rests upon them." (citations omitted)). Also, it is generally recognized that "where an indebtedness or obligation to pay has been established, the burden of proving payment is on the party who alleges it, ordinarily the debtor or defendant." 70 C.J.S. *Payment* § 69, pp. 57–58 (1987) (footnotes omitted). Further, "[a]s a general rule, the burden of proving payment of a judgment rests on defendant or other person claiming payment." 50 C.J.S. *Judgment* § 665, p. 205 (1997) (footnotes omitted). Finally, in the context of determining arrearages in alimony payments, other states have held that the obligor has the burden of proof of payment. *See Moreau v. Falgout*, 304 So.2d 429 (La.Ct. App.1974); *Briggs v. Briggs*, 178 Or. 193, 165 P.2d 772 (1946); and *Marks v. Marks*, 98 Utah 400, 100 P.2d 207 (1940). Accordingly, we hold that where an obligee former spouse moves to collect alleged arrearages in alimony and child support payments mandated by

a divorce order, the obligor former spouse bears the burden of proving that he or she has fulfilled his or her alimony and child support obligations as defined in the divorce order.[11]

We have determined that cohabitation of the parties to a divorce decree creates no presumption that the obligor has fulfilled his or her support obligations. Rather, the parties' cohabitation is but one factor in determining whether the obligor former spouse met his or her support obligations. Also, the obligor bears the burden of proving that he or she has made court-ordered support payments. Therefore, we conclude that the circuit court erred as a matter of law in applying a presumption that the appellee met his support obligations by cohabiting with the obligee and their minor child and in placing the burden of proving child support arrearages on the appellant.

The appellee alleges, however, that the circuit court's finding that he fulfilled his child support obligations does not rest upon a presumption created by cohabitation. Rather, says the appellee, the evidence before the family law master showed that he supported his family during the cohabitation.

After removing from the final order the incorrect presumption that cohabitation is satisfaction of court-ordered alimony and child support, we are left with the following findings of fact to support the circuit court's decision that the appellee fulfilled his support obligations during the period in which the parties cohabited:

4. That the defendant testified that he gave cash and money to the Plaintiff in satisfaction of his support obligation while they were living together. It is substanti-

ated by the fact that he did not have a checking account prior to the divorce nor one after the divorce and that he was not the financial manager of his own finances.

5. That the parties continued to acquire assets together[.]

6. That the Plaintiff admits that the Defendant did a number of things with the minor child and did not ask for [sic] her for any money to do that.

7. That there are instances to suggest that the parties even after the divorce had financial obligations together.

These conclusory findings prevent this Court from determining the factual basis for the circuit court's ultimate conclusion that the appellee met his alimony and child support obligations during the time in which the parties cohabited. Specifically, we are unable to determine whether the final order rests entirely upon an improper presumption arising from the parties' cohabitation, or whether the family law master found sufficient evidence independent of the presumption on which to conclude that the appellee fulfilled his support obligations. In *Province v. Province*, 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996), this Court stated:

[t]he order [in a divorce proceeding] must be sufficient to indicate the factual and legal basis for the family law master's ultimate conclusion so as to facilitate a meaningful review of the issues presented. Where the lower tribunals fail to meet this standard—*i.e.* making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development. (Footnote omitted).

Accordingly, we reverse and remand with directions for the circuit court to reconsid-

---

11. W.Va.Code § 48A–5–2(g), intimates that the burden of proof is on the obligor to prove that he or she made the child support payments mandated by a divorce order. According to W.Va.Code § 48A–5–2(g), once the obligee files an affidavit of accrued support, if the obligor desires to contest the affidavit, he or she must either inform the CSED in writing of the reasons why the affidavit is contested and request a meeting with the CSED, or, where a circuit court has jurisdiction over the parties, obtain a date for a hearing before the circuit court or the family law master and mail written notice of such hearing to the obligee and to the CSED. Thus, once the obligee files an affidavit of accrued support, the obligor has the burden of contesting the affidavit. If the obligor does nothing at this point, withholdings will be made from the obligor's disposable earnings pursuant to a suggestee execution. In the event the obligor contests the affidavit of accrued support, it appears that he or she bears the burden of proving that the amount claimed to be in arrears is incorrect or that a writ of execution, suggestion or suggestee execution is not proper because of mistakes of fact.

er,[12] in accordance with the law set forth in this opinion, whether the appellee met the burden of proving fulfillment of his court-ordered obligations of $225.00 per month in child support and $100.00 per month in alimony during the parties cohabitation.[13] Because the appellant's sole assignment of error concerned alleged arrearages in alimony and child support payments which accrued during the parties' cohabitation, we leave undisturbed the remaining portions of the final order concerning prospective modifications in alimony and child support payments.[14] Accordingly, we affirm that portion of the circuit court's order.

## IV.

### CONCLUSION

In summary, there is no presumption that the parties' post-divorce cohabitation satisfied the appellee's support obligations. Rather, cohabitation is one factor to be considered. Also, the appellee bears the burden of proving that he met his support obligations during the parties' cohabitation. Therefore, the circuit court erred as a matter of law in holding that the parties' cohabitation created a presumption that the appellee met his support obligations and in placing the burden of proof of payment on the appellant. Absent this improper presumption, the circuit court's findings of fact on the issue of alleged arrearages in support payments are insufficient for meaningful review by this Court. Accordingly, we reverse on the issue of alleged arrearages and remand this case for the circuit court to reconsider, in accordance with the law set forth herein, the question of whether the appellee met his

12. We note that upon reconsideration of this case, the circuit court may either review the evidence and make findings of fact sufficient for meaningful review by this Court, or the circuit court may remand the case to the family law master for reconsideration.

13. Upon reconsideration of this case according to the law set forth herein, we recognize that the circuit court may reach the same conclusion, and support this conclusion with facts sufficient for meaningful review by this Court, or the circuit court may reach the opposite conclusion, i.e., that the appellee failed to fulfill his support obligations during the period in which the parties cohabited. In remanding this case, it is not the

support obligations as defined in the January 30, 1989 divorce order, and to make findings sufficient for this Court's review. The appellant does not challenge the prospective modifications made by the circuit court in its final order, and we affirm that portion of the order. Accordingly, this case is affirmed in part, reversed in part, and remanded with directions.

Affirmed in part, reversed in part, and remanded with directions.

intent of this Court to usurp the fact-finding and credibility-assessing role of the circuit court. We simply reiterate that the facts upon which the circuit court's decision rests must be supported by sufficient findings for meaningful review by this Court.

14. Specifically, the circuit court found that the appellee is not responsible for any alimony obligation for 1998, but left the issue of alimony open for possible future modification, and ordered the appellee to pay the appellant $200.00 per month for child support until the parties' child reaches the age of 18.